```
                   UNITED STATES DISTRICT COURT
                     DISTRICT OF CONNECTICUT

------------------------------- x
PAUL PAQUIN,                    :
                                :
        Plaintiff,              :
                                :
v.                              :  Civil No. 3:15-cv-218(AWT)
                                :
CRANE CO. indivudually and/or as:
parent, alter ego and/or        :
succesor-in-interest to CHAPMAN :
VALVE COMPANY, COCHRANE CORP.,  :
CHEMPUMP, CRANE SUPPLY, CRANE   :
PUMPS AND SYSTEMSN, INC. and/or :
JENKINS VALVES;                 :
CBS CORPORATION f/k/a VIACOM    :
INC., successor-by-merger with  :
CBS CORPORATION f/k/a           :
WESTINGHOUSE ELECTRIC           :
CORPORATION;                    :
AIR & LIQUID SYSTEMS CORPORATION:
as successor-by-merger to       :
BUFFALO PUMPS, INC.;            :
FOSTER WHEELER, LLC; and        :
VIAD CORP. individually and/or  :
successor-in-interest to THE    :
GRISCOM RUSSELL COMPANY         :
                                :
        Defendants.             :
------------------------------- x
```

**ORDER RE MOTIONS FOR SUMMARY JUDGMENT**

For the reasons set forth below, Crane Co.'s Motion for Summary Judgment (Doc. No. 72) is hereby DENIED, CBS Corporation's Fed. R. Civ. P. 56 Summary Judgment Motion (Doc. No. 78) is hereby DENIED, and Defendant Foster Wheeler LLC's Motion for Summary Judgment (Doc. No. 75) is hereby GRANTED.

1

**Legal Standard**

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(a).  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir. 1994).  When ruling on a motion for summary judgment, the court may not try issues of fact, but must leave those issues to the jury.  See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987).

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in its favor."  Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000)(quoting Delaware & Hudson Ry. Co. v. Consolidated Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990)).

**Applicable Law**

The parties dispute whether this matter is governed by federal maritime law or Connecticut state law.  The defendants contend that federal maritime jurisdiction exists over the

plaintiff's tort claim because the harm satisfies the "location" and "nexus" tests the Supreme Court set forth in Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527 (1995).  The plaintiff argues that the defendants satisfy neither test under Grubart and that Connecticut's Product Liability Act applies instead.  The court does not need to resolve whether federal maritime law or Connecticut state law applies because its analysis is the same under either standard.

Under the Connecticut Product Liability Act ("CPLA"), a product liability claim includes claims based on harm caused by the "manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging or labeling of any product."  Conn. Gen. Stat. Ann. § 52-572m.  "The CPLA is the exclusive remedy for any product defect action brought under Connecticut law, and it includes all actions related to the defect itself and to defects related to placing a product 'into the stream of commerce.'" Bray v. Ingersoll-Rand Co., No. 3:13-CV-1561 SRU, 2015 WL 728515, at *4 (D. Conn. Feb. 19, 2015) (internal citations omitted).  In Izzarelli v. R.J. Reynolds Tobacco Co., the Connecticut Supreme Court laid out the elements of a product liability claim as follows:

> "(1) the defendant was engaged in the
> business of selling the product; (2) the

> product was in a defective condition
> unreasonably dangerous to the consumer or
> user; (3) the defect caused the injury for
> which compensation was sought; (4) the
> defect existed at the time of the sale; and
> (5) the product was expected to and did
> reach the consumer without substantial
> change in condition."

321 Conn. 172, 184–85 (2016). While a product seller is exempted from liability to the extent "his product was altered or modified by a third party," this exemption does not apply if "the alteration or modification was the result of conduct that reasonably should have been anticipated by the product seller." § 52-572p.

Under federal maritime law, a plaintiff in a product liability case must show, with respect to each defendant, that "'(1) he was exposed to the defendant's product, and (2) the product was a substantial factor in causing the injury he suffered,' and (3) that the defendant manufactured or distributed the injurious product." Bray, 2015 WL 728515, at *4 (citing Lindstrom v. A-C Liab. Trust, 424 F.3d 488, 492 (6th Cir.2005)). "In order to demonstrate that the allegedly defective product was a 'substantial factor' in causing the plaintiff's injury, a plaintiff must show that it is 'more likely than not' that exposure to the product caused his injuries." Id. (citing Ruiz v. Victory Props., LLC, 315 Conn. 320, 324 (2015)). Moreover, the alleged harm must be "of the

4

same general nature as the foreseeable risk" posed by the defective product. Ruiz, 315 Conn. at 324.  "[A] mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient.  Rather, where a plaintiff relies on proof of exposure to establish that a product was a substantial factor in causing injury, the plaintiff must show a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural."  Perkins v. Air & Liquid Sys. Corp., No. 13 CIV. 8561 CM, 2015 WL 4610671, at *6 (S.D.N.Y. July 30, 2015) (citing Lindstrom 424 F.3d at 492).

Under the CPLA or general maritime law, the plaintiff "must demonstrate that the defendants manufactured or distributed a defective product, that the defect existed at the time [the plaintiff] utilized the product, that [the plaintiff] was exposed to that defective product without adequate warning or protection, and that exposure to the defective product caused [his injury]."  Bray, 2015 WL 728515, at *4.  The plaintiff may demonstrate these facts through reliance on circumstantial evidence.  See O'Brien v. Nat'l Gypsum Co., 944 F.2d 69, 72 (2d Cir. 1991) ("[I]t is beyond any doubt that circumstantial evidence alone may suffice to prove adjudicative facts.").

**Crane and CBS**

Crane Co. ("Crane") argues that "Plaintiff has produced no evidence to establish that Mr. Paquin was exposed to any allegedly[ ]defective Crane Co. product."  Def. Crane's Mem. 9 (Doc. No. 73).  Crane argues further that, in any event, the plaintiff "cannot establish that his alleged exposure to any Crane Co. asbestos containing product was a 'substantial factor' in causing his injuries."  Id. at 10.

CBS Corporation, f/k/a Westinghouse Electric Corporation ("CBS") also argues that the plaintiff has not produced any evidence that he was exposed to asbestos from CBS equipment. See Def. CBS's Mem. 5 (Doc. No. 78-1) ("Plaintiff has not proffered any evidence which . . . could raise a genuine issue as to his exposure to respirable asbestos dust associated with Westinghouse equipment aboard the U.S. Navy vessels on which he allegedly worked aboard at EB[.]").  CBS also argues that the plaintiff has not produced evidence that could establish that exposure to its products was a substantial factor in causing the injuries he suffered.  See id at 4-5.

However, the plaintiff has created genuine issues of material fact as to both questions with respect to these defendants.  For example, the affidavit of Charles Knapp identifies the equipment manufactured by each of Crane and CBS,

and then explains how it was insulated with asbestos and asbestos-containing insulation and utilized asbestos-containing gaskets.  He then avers that Crane's various types of valves and CBS's main turbines and SSTGs were utilized on every submarine constructed or overhauled at Electric Boat during his period of employment.  The plaintiff, in his affidavit, declares that equipment of these two defendants was on submarines on which he worked and that he worked inside virtually every submarine.  He avers that the work he performed on each submarine was in confined spaces and that as part of his duties, he cleaned up newly applied asbestos insulation that had fallen or broken off of pipes, cleaned up used and discarded asbestos-containing material, and moreover, performed "blowdowns," which caused asbestos lagging material from the pipes and machinery to come loose and enter the air.

Crane also argues that it is entitled to summary judgment on the plaintiff's claims of exemplary and punitive damages in Count II of the complaint. However, as discussed in the plaintiff's opposition, the Supreme Court in Yamaha Motor Corp., U.S.A. v. Calhoun, 516 U.S. 199 (1996), implicitly overturned Preston v. Franz, 11 F.3d 357 (2d Cir. 1993), and Whalstrom v. Kawasaki Heavy Indus., Ltd., 4 F.3d 1084 (2d Cir. 1993).  See Gravatt v. City of New York, No 97-civ-0354(RWS), 1998 WL

171491, at *13 (S.D.N.Y. Apr. 10, 1998) ("[T]he Supreme Court ruled in [Yamaha] that state wrongful death remedies have not been displaced by federal law in cases involving the wrongful death of non-seamen in territorial waters.").

## Foster Wheeler

Foster Wheeler LLC ("Poster Wheeler") contends that it is entitled to summary judgment because the plaintiff "has not offered any admissible evidence demonstrating that he was exposed to any asbestos-containing products manufactured, sold, supplied or in any way attributable to Foster Wheeler." Def. Foster Wheeler's Mem. 2 (Doc. No. 76).

The evidence offered by the plaintiff with respect to Foster Wheeler is similar in most respects to the evidence offered with respect to Crane and CBS, but different in one material respect. While Knapp, in his affidavit, avers that Crane's equipment and CBS's equipment was utilized in every submarine, he merely avers with respect to Foster Wheeler that its equipment was "utilized on many, if not most, submarines constructed or overhauled at Electric Boat during [his] period of employment." Knapp Aff. ¶ 24 (Doc. No. 106-1). Thus, with respect to Foster Wheeler and the question of whether the plaintiff was exposed to its equipment, the answer is, in

substance, "maybe, but maybe not." This is not sufficient to create a genuine issue of material fact as to whether the plaintiff was exposed to asbestos-containing products manufactured, sold, supplied or in any way created by Foster Wheeler.

    Therefore, Foster Wheeler is entitled to summary judgment on the claims against it.

    It is so ordered.

    Signed this 31st day of March, 2017, at Hartford, Connecticut.

                                    /s/ AWT
                          Alvin W. Thompson
                          United States District Judge